IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>      v.<br><br>CITIZENS FOR A PRO-LIFE SOCIETY, INC., RED ROSE RESCUE, LAURA GIES, LAUREN HANDY, CLARA MCDONALD (AKA "STEPHANIE BERRY"), MONICA MILLER, CHRISTOPHER MOSCINSKI, JAY SMITH (AKA "JUANITO PICHARDO"), and AUDREY WHIPPLE,<br><br>    Defendants,<br><br>CHRISTOPHER MOSCINSKI,<br><br>    Defendant/Third-Party Plaintiff,<br><br>      v.<br><br>MERRICK GARLAND, individually and in his official capacity as Attorney General of the United States of America,<br><br>    Third-Party Defendant. | No. 1:24-cv-00893-CAB<br><br>**DEFENDANT CHRISTOPHER MOSCINSKI'S ANSWER, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Christopher A. Boyko |

**ANSWER**

Defendant Christopher Moscinski ("Defendant"), by and through undersigned counsel, files this Answer to Plaintiff's Complaint and hereby denies any alleged violations of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (hereinafter "FACE"). Any application or enforcement of FACE under the facts of this case violates the United States Constitution and federal statutory law.

- 1 -

1.      Defendant denies all allegations contained in paragraph 1.

## I.      JURISDICTION AND VENUE

2.      Defendant admits that this Court has jurisdiction over the federal claims advanced in this case.

3.      Defendant denies the allegation in this paragraph as 18 U.S.C. § 248 is unconstitutional on its face and as applied.  Therefore, the United States has no authority to enforce this statute in this case.

4.      Defendant admits that venue in this judicial district is proper.

## II.     PARTIES

5.      Defendant admits the allegation contained in paragraph 5.

6.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 6 and leaves Plaintiff to its proof.

7.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 7 and leaves Plaintiff to its proof.

8.      Defendant denies the allegations contained in paragraph 8 based on the following. Upon information and belief, Red Rose Rescue is a pro-life organization that seeks to protect women and unborn babies from the harm caused by the violent act of abortion.  Upon information and belief, many Red Rose Rescue participants never engage in trespass on the property of abortion centers.  Additionally, upon information and belief, Red Rose Rescue activities take place at abortion centers, which are not health facilities.  Abortion centers are places where healthy, innocent human lives are destroyed.  Abortion is not healthcare as it neither cures nor prevents any illness or injury.

9. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 9 and leaves Plaintiff to its proof.

10. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 10 and leaves Plaintiff to its proof.

11. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 11 and leaves Plaintiff to its proof.

12. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 12 and leaves Plaintiff to its proof.

13. Defendant denies that he resides in Bronx, New York, and he denies that he is currently incarcerated at the Central Detention Facility in Washington D.C.

14. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 14 and leaves Plaintiff to its proof.

15. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 15 and leaves Plaintiff to its proof.

## III.     GENERAL FACTUAL BACKGROUND

16. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 16 and leaves Plaintiff to its proof.

17. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 17, except that Defendant admits that the quoted language is from *United States v. Soderno*, 82 F.3d 1370, 1372 (7th Cir. 1996), which speaks for itself.

18. Defendant admits that the quoted language is from 18 U.S.C. § 248.

A.      <u>RED ROSE RESCUE AND ITS TACTICS</u>

19.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 19 and leaves Plaintiff to its proof.

20.      Defendant denies the allegations contained in paragraph 20.

21.      Defendant denies the allegations contained in paragraph 21.

22.      Defendant denies the allegations contained in paragraph 22.

23.      Defendant denies the allegations contained in paragraph 23, except to admit that "RRR participants" hand out red roses as an act of love. Defendant affirmatively states, and incorporates this statement in response to all allegations set forth in the Complaint, the following: Red Rose Rescue participants engage in peaceful acts of love to convince and show women who are in crisis pregnancies that they and their unborn babies are loved and will be cared for and that abortion is not a loving option. Red Rose Rescue participants purposefully do not engage in any threats, force, physical obstruction, or any other activity that is proscribed by FACE, and Defendant did not engage in any such conduct in this case.

24.      Defendant denies the allegations contained in paragraph 24.

25.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 25 and leaves Plaintiff to its proof.

26.      Defendant denies the allegations contained in paragraph 26 and leaves Plaintiff to its proof.

27.      Defendant denies the allegations contained in paragraph 27 and leaves Plaintiff to its proof.

28.      Defendant denies the allegations contained in paragraph 28 and leaves Plaintiff to its proof.

29.     Defendant neither admits nor denies the allegations contained in paragraph 29, but states that the video speaks for itself and leaves Plaintiff to its proof.

30.     Defendant denies the allegations contained in paragraph 30 and states that the video speaks for itself.

31.     Defendant denies the allegations contained in paragraph 31.

32.     Defendant denies the allegations contained in paragraph 32 and states that the video speaks for itself.

33.     Defendant neither admits nor denies the allegations contained in paragraph 33 and states that the video speaks for itself and leaves Plaintiff to its proof.

B.      CITIZENS FOR A PRO-LIFE SOCIETY AND MONICA MILLER'S INVOLVEMENT WITH RED ROSE RESCUE.

34.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 34 and leaves Plaintiff to its proof.

35.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 35 and leaves Plaintiff to its proof.

36.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 36 and leaves Plaintiff to its proof.

37.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 37 and leaves Plaintiff to its proof.

38.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 38 and leaves Plaintiff to its proof.

39.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 39 and leaves Plaintiff to its proof.

40. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 40 and leaves Plaintiff to its proof.

41. Defendant denies most of the allegations contained in paragraph 41 and leaves Plaintiff to its proof.

a. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 41a and leaves Plaintiff to its proof.

b. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 41b and leaves Plaintiff to its proof.

c. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 41c and leaves Plaintiff to its proof.

d. Defendant admits that he has been arrested on multiple occasions for violating local state laws and on one occasion for violating FACE and on this one occasion he was not engaging in a Red Rose Rescue as participants in Red Rose Rescue purposefully do not engage in any conduct that violates FACE, and Defendant did not engage in any conduct that violates FACE in this case.

e. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 41e and leaves Plaintiff to its proof.

f. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 41f and leaves Plaintiff to its proof.

## IV. SPECIFIC ALLEGATIONS ABOUT THE NORTHEAST OHIO EVENTS

42. Defendant denies the allegations contained in paragraph 42.

43. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 43 and leaves Plaintiff to its proof.

A.      JUNE 4, 2021 – NORTHEAST OHIO WOMEN'S CENTER

44.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 44 and leaves Plaintiff to its proof.  Defendant affirmatively states that any "closure" was the result of the actions of the staff at NOWC.

45.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 45 and leaves Plaintiff to its proof.

46.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 46 and leaves Plaintiff to its proof.

47.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 47 and leaves Plaintiff to its proof.  Defendant admits that he and Defendant Whipple peacefully entered NOWC's waiting room through the front entrance by simply walking into the center.

48.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 48 and leaves Plaintiff to its proof, but admits that he and Defendants Gies and McDonald were peacefully handing out red roses as an act of love to women waiting to have an abortion, and Defendant was offering these women assistance to help them avoid making a fateful decision that would destroy the innocent life within them as well as harm them for the rest of their lives.

49.      Defendant denies the allegations contained in paragraph 49 and leaves Plaintiff to its proof, but admits that the NOWC staff asked him to leave because the staff did not want him to convince any woman to leave the center as that would undermine the center's profits.  Defendant also admits that the NOWC staff forced the "patients" in the waiting room to leave as there was

no legitimate reason for having them leave based on Defendant's peaceful, nonviolent, and non-obstructive actions.

50.     Defendant denies the allegations contained in paragraph 50.

51.     Defendant denies the allegations contained in paragraph 51 and admits that he would have departed the center if he knew that the women and their unborn babies were safe from harm.

52.     Defendant denies the allegations contained in paragraph 52.

53.     Defendant admits the allegations contained in paragraph 53.

54.     Defendant denies the allegations contained in paragraph 54 except to admit that he would have departed the center if he knew that the women and their unborn babies were safe from harm.

55.     Defendant denies that he or any other defendant was "occupying the waiting room" as Plaintiff alleges.

   a.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 55a and leaves Plaintiff to its proof.

   b.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 55b and leaves Plaintiff to its proof.

56.     Defendant denies that he did or said anything "similarly" and admits that pursuant to his deeply held religious convictions and being motivated by these religious convictions, he spoke, proclaiming, as a Catholic priest and in the name of Jesus Christ, words to the effect, "In the name of Jesus Christ, I forbid you from committing any abortions for today."

57.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 57 and leaves Plaintiff to its proof.

58.     Defendant admits the allegations contained in paragraph 58 as they apply to him and lacks sufficient information to admit or deny the remaining allegations contained in this paragraph and leaves Plaintiff to its proof.

59.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 59 and leaves Plaintiff to its proof.

   a.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 59a and leaves Plaintiff to its proof.

   b.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 59b and leaves Plaintiff to its proof.

60.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 60 and leaves Plaintiff to its proof.

   a.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 60a and leaves Plaintiff to its proof.

   b.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 60b and leaves Plaintiff to its proof.

   c.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 60c and leaves Plaintiff to its proof.

   d.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 60d and leaves Plaintiff to its proof.

61.     Defendant admits the allegations contained in paragraph 61.

62.     Defendant denies the allegations contained in paragraph 62.

63.     Defendant denies the allegations contained in paragraph 63.

B.      JUNE 5, 2021 – BEDFORD HEIGHTS SURGERY CENTER

64.     Defendant denies the allegations contained in paragraph 64.

65.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 65 and leaves Plaintiff to its proof.

66.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 66 and leaves Plaintiff to its proof.

67.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 67 and leaves Plaintiff to its proof.

68.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 68 and leaves Plaintiff to its proof.

69.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 69 and leaves Plaintiff to its proof.

70.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 70 and leaves Plaintiff to its proof.

71.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 71 and leaves Plaintiff to its proof.

72.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 72 and leaves Plaintiff to its proof.

73.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 73 and leaves Plaintiff to its proof.

74.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 74 and leaves Plaintiff to its proof.

75.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 75 and leaves Plaintiff to its proof.

76.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 76 and leaves Plaintiff to its proof.

77.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 77 and leaves Plaintiff to its proof.

78.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 78 and leaves Plaintiff to its proof.

79.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 79 and leaves Plaintiff to its proof.

80.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 80 and leaves Plaintiff to its proof.

81.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 81 and leaves Plaintiff to its proof.

82.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 82 and leaves Plaintiff to its proof.

83.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 83 and leaves Plaintiff to its proof.

84.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 84 and leaves Plaintiff to its proof.

85.     Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 85 and leaves Plaintiff to its proof.

86. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 86 and leaves Plaintiff to its proof.

87. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 87 and leaves Plaintiff to its proof.

88. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 88 and leaves Plaintiff to its proof.

89. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 89 and leaves Plaintiff to its proof.

90. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 90 and leaves Plaintiff to its proof.

91. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 91 and leaves Plaintiff to its proof.

92. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 92 and leaves Plaintiff to its proof.

93. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 93 and leaves Plaintiff to its proof.

 a. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 93a and leaves Plaintiff to its proof.

 b. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 93b and leaves Plaintiff to its proof.

 c. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 93c and leaves Plaintiff to its proof.

d.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 93d and leaves Plaintiff to its proof.

94.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 94 and leaves Plaintiff to its proof.

95.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 95 and leaves Plaintiff to its proof.

96.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 96 and leaves Plaintiff to its proof.

97.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 97 and leaves Plaintiff to its proof.

98.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 98 and leaves Plaintiff to its proof.

99.      Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 99 and leaves Plaintiff to its proof.

**COUNT I**
**Physical Obstruction, Force, Threat of Force**
**18 U.S.C. § 248(a)(1), § 248(c)(2)(B)**
**Civil Penalties and Damages**
**(All Defendants)**

100.      Defendant incorporates herein all above paragraphs.

101.      Defendant denies the allegations contained in paragraph 101.

102.      Defendant denies the allegations contained in paragraph 102.

103.      Defendant denies the allegations contained in paragraph 103.

- 13 -

## COUNT II
### Physical Obstruction, Force, Threat of Force
### 18 U.S.C. § 248(a)(1), § 248(c)(2)(B)
### Injunctive Relief
### (All Defendants)

104.    Defendant incorporates herein all above paragraphs.

105.    Defendant denies the allegations contained in paragraph 105.

106.    Defendant denies the allegations contained in paragraph 106.

107.    Defendant denies the allegations contained in paragraph 107.

### PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that the Court dismiss this action and award Defendant his costs and fees for having to defend against it.

A.    Plaintiff is not entitled to any relief.

B.    Plaintiff is not entitled to any relief.

### AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.    Plaintiff's claim for equitable relief is barred by the doctrine of laches.

3.    Defendant Moscinski's actions that form the basis for Plaintiff's Complaint are protected by the First Amendment and the Religious Freedom Restoration Act.

4.    Plaintiff has engaged in the unlawful selective enforcement of the law in violation of the equal protection guarantee of the Fifth Amendment.

5.    Plaintiff's Complaint is frivolous and a thinly veiled effort to target pro-life supporters based on their viewpoint on the issue of abortion in violation of the United States Constitution.

- 14 -

6.      Plaintiff's Complaint is frivolous and a thinly veiled effort to target Defendant Moscinski because he is a Catholic priest and leader in the pro-life movement, in violation of the United States Constitution.

7.      FACE is unconstitutional facially and as applied to the facts of this case.

8.      The application of FACE to the facts of this case violates the Tenth Amendment, the Commerce Clause, and principles of federalism and is thus unconstitutional.

9.      Plaintiff's Complaint is an abuse of process in that Plaintiff is engaging in meritless and vexatious litigation to harm Defendant and other pro-lifers and to silence their political speech and expressive association protected by the United States Constitution.

10.     Defendant is entitled to an award of his attorneys' fees, costs, and expenses for having to defend against this meritless and frivolous lawsuit.

## COUNTERCLAIMS & THIRD-PARTY CLAIMS COMPLAINT

Defendant/Third-Party Plaintiff Christopher Moscinski (hereinafter "Fr. Fidelis") by and through undersigned counsel, brings these counterclaims and third-party claims against the above-named Plaintiff/Counterclaim Defendant and Third-Party Defendant (hereinafter and collectively referred to as "Attorney General"), their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

### INTRODUCTION

1.      These counterclaims and third-party claims constitute a civil action in which Fr. Fidelis seeks to protect his fundamental rights guaranteed by the United States Constitution and federal statutory law. Through this action, Fr. Fidelis seeks to be free from the unlawful and selective enforcement of the law because he is a pro-life Catholic priest, and he seeks to protect his right to associate with others who seek to end the tragedy of abortion.

2.      These counterclaims and third-party claims are appropriate and necessary as the underlying civil claims advanced by Plaintiff in this action are being directed and orchestrated by the Attorney General pursuant to his unlawful policy of selectively enforcing federal law and unlawfully targeting pro-lifers based on their political and religious opposition to abortion.

3.      Fr. Fidelis seeks an injunction enjoining the enforcement of the Attorney General's policy of selectively enforcing FACE against peaceful pro-lifers as set forth in this pleading.  Fr. Fidelis seeks a declaration that the Attorney General's acts, specifically his selective enforcement of FACE, violates his rights protected by the First, Fifth, and Tenth Amendments to the U.S. Constitution and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4, as set forth in this pleading.  Fr. Fidelis seeks a declaration that FACE is unconstitutional and an injunction enjoining its enforcement.  Fr. Fidelis seeks damages, including nominal damages, under RFRA against the Attorney General in his individual capacity as he is personally responsible for enforcing FACE in this case and for developing and enforcing the policy of selectively enforcing federal law and unlawfully targeting pro-lifers as set forth in this pleading. Finally, Fr. Fidelis seeks an award of attorneys' fees and costs.

**JURISDICTION AND VENUE**

4.      This action in which the United States and its Attorney General are crossclaim and third-party defendants arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346.

5.      Fr. Fidelis's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6.      Fr. Fidelis's claim for damages against the Attorney General is authorized by RFRA as set forth in *Tanzin v. Tanvir*, 592 U.S. 43, 51 (2020) ("A damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees.  It is also the *only* form of relief that can remedy some RFRA violations.").

7.      This Court has jurisdiction over the claims against the Attorney General as he has substantial contacts in this jurisdiction, and he is personally responsible for directing and orchestrating the selective and unlawful enforcement of FACE in the underlying civil action.

8.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the acts giving rise to Fr. Fidelis's claims occurred in this district.

9.      This Court has authority to award Fr. Fidelis his reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 504, 28 U.S.C. § 1920, 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court.

**PARTIES**

10.     Fr. Fidelis is a Catholic priest.  He is a member of the Franciscan Friars of the Renewal.  Beginning at his novitiate, Christoper Moscinski took the name of Fr. Fidelis.

11.     Third-Party Defendant Merrick Garland is the Attorney General of the United States.  In his official capacity as Attorney General, Merrick Garland is the chief law enforcement officer of the United States, and he has the authority and power to enforce FACE.  The Attorney General is personally directing the enforcement of FACE in this case, and he has personally adopted and enforces a policy of selective enforcement of FACE to target pro-lifers based on their political and religious opposition to abortion.  In particular, the Attorney General is targeting Fr. Fidelis as he is an influential religious leader in the pro-life movement.  The Attorney General is sued individually and in his official capacity.

- 17 -

## FACTUAL ALLEGATIONS

12. The U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 231 (2022), outraged abortion supporters.  This was particularly true of the Biden administration and its officials, including the Attorney General.  This anger has fueled the Attorney General's efforts to retaliate against pro-lifers, including Fr. Fidelis.

13. A top official in Merrick Garland's Department of Justice publicly claimed that the "Supreme Court dealt a devastating blow to women through the country" when it issued the *Dobbs* decision, thus "taking away the constitutional right to abortion and increasing the urgency of [the Department's] work" to enforce FACE to protect abortion.

14. The Attorney General has weaponized FACE against American citizens, including Fr. Fidelis, because they are pro-life.

15. The Attorney General has established an official policy directive of selectively enforcing federal law against pro-lifers and targeting pro-lifers with enforcement actions under FACE and other federal law.  In particular, he is targeting those individuals who oppose abortion based on their deeply held religious convictions, considering them to be the most important targets as religious convictions are a strong motivator for people to act.  As a result, Fr. Fidelis is a particularly important target for the Attorney General.  The underlying civil action against Fr. Fidelis is being advanced pursuant to the Attorney General's policy directive.

16. The Attorney General's policy directive as set forth in this pleading is an intentional course of conduct to target pro-lifers, including Fr. Fidelis, and to selectively enforce federal law against pro-lifers, including Fr. Fidelis, because they oppose abortion.

17. The actions of Fr. Fidelis at the Northeast Ohio Women's Center—actions which were prosecuted locally as a simple trespass—occurred on or about June 4, 2021.  Yet, the Attorney

General waited until May 20, 2024 (an election year) to file this civil action against Fr. Fidelis and other pro-lifers as he was using this case to make a political point to ensure that abortion remained a critical issue in the 2024 general election and to show the base of his party that the Biden/Harris administration would continue to advance policies that protect abortion.

18.     The Attorney General waited nearly 3 years to bring this case against Fr. Fidelis and the other pro-life defendants because these defendants are political targets of the Attorney General during this election year in which he, as a member of the Biden/Harris Administration and supporter of Kamala Harris's political campaign, made abortion a primary issue.  Consequently, Fr. Fidelis became a political target of those who oppose his viewpoint on abortion, specifically including the Attorney General.

19.     The Attorney General is targeting Fr. Fidelis as he is a well-respected religious leader in the pro-life community and a staunch defender of human life.

20.     Through his policy directive of selectively targeting pro-lifers and selectively enforcing FACE and other federal law, the Attorney General has directed his Federal Bureau of Investigation (FBI) to use draconian and harsh tactics of intimidation and fear in furtherance of the Attorney General's policy directive.

21.     The Attorney General's policy directive was on full display when the FBI, under the direction of the Attorney General, raided the home of Mark Houck, a Catholic father of seven, and arrested him at gunpoint in front of his stunned and terrified wife and children for an alleged violation of FACE involving an incident that occurred outside of an abortion center in Philadelphia—an incident that the local district attorney's office declined to prosecute as there was no basis to do so.

22. The Attorney General forced Houck to stand trial for this bogus FACE charge, knowing that the process is punishment. The jury appropriately acquitted Houck.

23. Another home arrest occurred just weeks after Houck's, at the home of pro-lifer Paul Vaughn, a father of eleven, who recorded a video of fellow pro-lifers singing and praying outside a Tennessee abortion center in March 2021. Some of the pro-lifers involved in the demonstration (not Vaughn) were arrested for blocking the doors to the abortion center. There was no violence involved.

24. The FBI appeared at Vaughn's house with weapons in hand a year after the incident to execute an arrest warrant as Vaughn was preparing to take his children to school. Vaughn's wife and children were stunned and terrified by the incident.

25. The Attorney General didn't just charge Vaughn with a FACE violation, which would have been at most a six-month misdemeanor in light of the facts. Instead, the Attorney General added a violation of 18 U.S.C. § 241 (conspiracy to violate civil rights, which carries a ten-year penalty) to enhance the impact of the prosecution on the pro-life community.

26. The Attorney General employed a similar tactic in a prosecution of several pro-lifers who were involved in a peaceful rescue at an abortion center in Washington, D.C. Relying on 18 U.S.C. § 241, some of the pro-lifers received multi-year jail sentences for their nonviolent actions simply because the actions occurred at an abortion center.

27. The Attorney General focuses his law enforcement resources against pro-lifers while turning a blind eye to the violent actions of left-wing groups like Antifa and groups aligned with the Black Lives Matter political movement. The Attorney General has purposefully chosen to pursue legal action against the peaceful actions of pro-lifers rather than employ his law

enforcement resources to stop the violent actions of groups to which he is politically aligned, such as Antifa and those associated with Black Lives Matter.

28. Following the *Dobbs* decision, numerous pregnancy centers and Catholic churches were attacked, threatened, and vandalized by abortion supporters. And even though these actions, which in many instances were violent and destructive, violate FACE, the Attorney General failed to enforce the law in the same manner against these criminals because the attackers were motivated by their pro-abortion views—views shared by the Attorney General. And the Attorney General would never add a charge for violating 18 U.S.C. § 241 against these pro-abortion criminals even though the right to freedom of speech and religious exercise are actual civil rights protected by the U.S. Constitution and abortion is not.

29. In the time since the leak of the *Dobbs* decision, pro-life churches and pregnancy centers have been vandalized, broken into, threatened, and even firebombed by pro-abortion activists. Yet, the Attorney General has not zealously prosecuted these criminals.

30. In 2022, the Attorney General brought charges against at least 26 people who were actively and peacefully opposing abortion but not one against pregnancy center vandals.

31. The underlying civil action in this case is part of the same Attorney General's policy directive. This underlying civil action is part of the same pattern and course of conduct, further evidencing the Attorney General's policy directive to target pro-lifers for the selective enforcement of federal law.

32. The Attorney General is selectively enforcing the law against those who disagree with him on abortion. Meanwhile, pro-abortion activists whose violent activities are proscribed by FACE are treated leniently by the Attorney General.

33.     FACE protects pregnancy centers and it prohibits: "Whoever . . . by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person *lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship*."  18 U.S.C. § 248(a)(2) (emphasis added).  FACE also proscribes: "Whoever . . . intentionally damages or destroys the property of a facility, or attempts to do so, . . . *the property of a place of religious worship*."  18 U.S.C. § 248(a)(3) (emphasis added).  Yet, the Attorney General largely disregards these provisions of FACE because they protect pro-lifers.

34.     Abortion is a violent act that results in the death of an innocent human life.  It is not "health services."

35.     It is a universal moral norm, and thus a fundamental teaching of the Catholic faith, that abortion is intrinsically evil.  It can never be justified.

36.     The Attorney General rejects the Catholic teaching on abortion and seeks to punish Catholic pro-lifers who put their faith into action with regard to the issue of abortion, and this is particularly the case with Fr. Fidelis.

37.     The Attorney General has targeted for adverse treatment those associated with Red Rose Rescue, which is a peaceful, non-violent pro-life organization.  However, the Attorney General refuses to target for law enforcement action Jane's Revenge, which is a militant, extremist abortion rights group that encourages and claims responsibility for acts of firebombing, vandalism, and arson in the United States.  Accordingly, the Attorney General is dedicating law enforcement resources to target peaceful pro-lifers while refusing to take similar law enforcement action against violent pro-abortion groups even though their violent actions violate federal law.

38.     Fr. Fidelis's pro-life activity, including his actions that serve as the basis for the underlying civil action in this case, are motivated by his sincerely held religious beliefs.

39.     The Catechism of the Catholic Church (CCC) states: "Since the first century the Church has affirmed the moral evil of every procured abortion.  This teaching has not changed and remains unchangeable.  Direct abortion, that is to say, abortion willed either as an end or a means, is gravely contrary to the moral law."  CCC No. 2271.

40.     The Catholic Church teaches that human life must be respected and protected absolutely from the moment of conception.  From the first moment of his existence, a human being must be recognized as having the rights of a person—among which is the inviolable right of every innocent being to life.

41.     Formal cooperation in an abortion constitutes a grave offense.  The Catholic Church attaches the canonical penalty of excommunication to this crime against human life.  A person who procures a completed abortion incurs excommunication *latae sententiae* by the very commission of the offense, and subject to the conditions provided by Canon Law.  The Catholic Church does not thereby intend to restrict the scope of mercy.  Rather, she makes clear the gravity of the crime committed, the irreparable harm done to the innocent who is put to death, as well as to the parents and the whole of society.

42.     The Catholic Church teaches that the inalienable rights of the person must be recognized and respected by civil society and the political authority.  These human rights depend neither on single individuals nor on parents; nor do they represent a concession made by society and the state; they belong to human nature and are inherent in the person by virtue of the creative act from which the person took his origin.  Among such fundamental rights in this regard is every

human being's right to life and physical integrity from the moment of conception until natural death.

43. The moment a positive law deprives a category of human beings of the protection which civil legislation ought to accord them, the state is denying the equality of all before the law. When the government does not place its power at the service of the rights of each citizen, and in particular of the more vulnerable, the very foundations of a government based on law are undermined. As a consequence of the respect and protection which must be ensured for the unborn child from the moment of conception, the law must provide appropriate penal sanctions for every deliberate violation of the child's rights.

### FIRST CLAIM FOR RELIEF
### (Freedom of Speech & Expressive Association - First Amendment)

44. Fr. Fidelis hereby incorporates by reference all stated paragraphs set forth herein.

45. The actions of the Attorney General as set forth in this pleading, specifically including his policy directive to target Fr. Fidelis and other pro-lifers for the selective enforcement of federal law, are a content- and viewpoint-based restriction on speech in violation of the First Amendment.

46. The actions of the Attorney General as set forth in this pleading, specifically including his policy directive to target Fr. Fidelis and other pro-lifers for the selective enforcement of federal law, constitute government-sanctioned discrimination and censorship of free speech in violation of the First Amendment.

47. The freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech. Implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends free from

government intrusions or burdens, such as those caused by the Attorney General's actions, including his policy directive. As set forth in this pleading, the Attorney General's actions have violated the right to expressive association protected by the First Amendment.

48. As set forth in this pleading, the actions of the Attorney General, specifically including his policy directive to target Fr. Fidelis and other pro-lifers for the selective enforcement of federal law, deprives Fr. Fidelis and other pro-lifers of their fundamental right of expressive association by chilling the exercise of this right, in violation of the First Amendment.

49. The Attorney General's actions as set forth in this pleading have caused, and will continue to cause, Fr. Fidelis to suffer undue hardship and irreparable injury.

50. Fr. Fidelis lacks an adequate or available administrative remedy.

51. Fr. Fidelis has no adequate remedy at law to correct the continuing deprivation of his legal rights.

52. The Attorney General's violation of the First Amendment has caused and will continue to cause Fr. Fidelis to suffer undue hardship and irreparable injury.

53. As a direct and proximate result of the actions of the Attorney General as set forth in this pleading, Fr. Fidelis has suffered irreparable harm, including the loss of his rights to free speech and expressive association, entitling him to declaratory and injunctive relief.

**SECOND CLAIM FOR RELIEF**
**(Equal Protection / Selective Enforcement - Fifth Amendment)**

54. Fr. Fidelis hereby incorporates by reference all stated paragraphs set forth herein.

55. By targeting pro-lifers, including Fr. Fidelis, and selectively enforcing federal law against them because of their political views and religious beliefs, the Attorney General has deprived Fr. Fidelis of the equal protection of the law guaranteed under the Fifth Amendment to the United States Constitution.

56.     The Supreme Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment. Consequently, case law interpreting the Equal Protection Clause of the Fourteenth Amendment is applicable when reviewing an equal protection claim arising under the Fifth Amendment's Due Process Clause, as in this case.

57.     As set forth in this pleading, others similarly situated, in particular, violators of FACE against pregnancy centers and churches, generally have not been prosecuted by the Attorney General, and the Attorney General's prosecution of Fr. Fidelis is selective, invidious, in bad faith, and based on impermissible considerations such as religion, religious beliefs, political viewpoints, and the exercise of constitutional rights.

58.     The Attorney General is targeting Fr. Fidelis and other similarly situated pro-lifers for adverse treatment because of their viewpoints on political and social issues, in violation of the equal protection guarantee of the Fifth Amendment.

59.     While targeting and selectively enforcing the law against pro-lifers, the Attorney General refuses to engage in similar law enforcement actions against individuals who are pro-abortion and who engage in more egregious and violent conduct that violates the same law (FACE), in violation of the equal protection guarantee of the Fifth Amendment.

60.     The actions of the Attorney General as set forth in this pleading, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, deprive Fr. Fidelis of the equal protection of the law in violation of the Fifth Amendment.

61.     The Attorney General's discriminatory treatment of Fr. Fidelis in violation of the equal protection guarantee of the Fifth Amendment has caused and will continue to cause Fr.

- 26 -

Fidelis to suffer undue hardship and irreparable injury, entitling him to declaratory and injunctive relief.

### THIRD CLAIM FOR RELIEF
### (Religious Freedom Restoration Act - 42 U.S.C. § 2000bb, *et. seq.*)

62.     Fr. Fidelis hereby incorporates by reference all stated paragraphs set forth herein.

63.     The actions of the Attorney General, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, violates the Religious Freedom Restoration Act (42 U.S.C. § 2000bb, *et. seq.*).

64.     RFRA, which applies to any "branch, department, agency, instrumentality, and official of the United States," plainly applies to the Attorney General and his Department of Justice.  42 U.S.C. § 2000bb-2(1).

65.     Fr. Fidelis's sincerely held religious beliefs compel him to advocate for the protection of human life, to encourage women to turn away from the deadly sin of abortion, to encourage those engaged in the abortion industry to repent and turn away from promoting the deadly sin of abortion, and to participate in pro-life activities, including those of Red Rose Rescue, to advance his religious beliefs and religious exercise.

66.     Fr. Fidelis's compliance with these religious beliefs is a religious exercise.

67.     The actions of the Attorney General as set forth in this pleading, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, substantially burden Fr. Fidelis's sincerely held religious beliefs.

68.     The actions of the Attorney General as set forth in this pleading, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, for the selective enforcement of federal law pressure Fr. Fidelis to significantly modify his religious

behavior and beliefs by forcing him to remain inactive and silent as innocent human life is destroyed by abortion and the souls of those who support abortion are destroyed in the process.

69.     The actions of the Attorney General as set forth in this pleading, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, do not further any compelling federal governmental interest. And this is particularly true in this case as Fr. Fidelis was prosecuted and punished under local state law for what amounted to a simple trespass at an abortion center.

70.     The actions of the Attorney General as set forth in this pleading, specifically including his policy directive targeting religious pro-life leaders, including Fr. Fidelis, are not the least restrictive means to accomplish any permissible federal governmental interest as any legitimate government interest is already covered by local state laws.

71.     Fr. Fidelis lacks an adequate or available administrative remedy.

72.     Fr. Fidelis has no adequate remedy at law to correct the continuing deprivation of his legal rights.

73.     The Attorney General's violation of RFRA as set forth in this pleading has caused and will continue to cause Fr. Fidelis to suffer undue hardship and irreparable injury, entitling him to declaratory and injunctive relief and damages, including nominal damages.

**FOURTH CLAIM FOR RELIEF**
**(Federalism - Tenth Amendment)**

74.     Fr. Fidelis hereby incorporates by reference all stated paragraphs set forth herein.

75.     The federal government is a government of limited and enumerated powers. This limitation protects the interests of the States and the liberty interests of the people, including Fr. Fidelis. Aside from this limitation on the expressed powers of the federal government established by Article I of the Constitution, the Tenth Amendment guarantees that "[t]he powers not delegated

to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Accordingly, the Tenth Amendment protects individuals, such as Fr. Fidelis, from the overreach of the federal government, as in this case.

76.     Fr. Fidelis asserts here an injury from governmental action taken in excess of the authority that federalism defines.

77.     Federalism protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions. By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, as in this case, that liberty is at stake.

78.     The application of FACE in this case violates the Tenth Amendment and the principles of federalism.

79.     The actions of Fr. Fidelis in the underlying civil case amounted to trespass, at best, and trespass is a paradigmatic common-law state crime. Accordingly, the Attorney General's application of FACE and its enforcement against Fr. Fidelis in the underlying civil action would convert virtually every trespass at an abortion facility into a federal offense in violation of the principles of federalism and the Tenth Amendment.

80.     The Attorney General's violation of the principles of federalism and the Tenth Amendment as set forth in this pleading has caused and will continue to cause Fr. Fidelis to suffer undue hardship and irreparable injury, entitling him to declaratory and injunctive relief.

**FIFTH CLAIM FOR RELIEF**
**(Commerce Clause/Enforcement Clause of the Fourteenth Amendment)**

81.     Fr. Fidelis hereby incorporates by reference all stated paragraphs set forth herein.

- 29 -

82.     As the facts of this underlying civil case demonstrate, *Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002), was wrongly decided.

83.     FACE is unconstitutional because Congress exceeded its authority under the Commerce Clause and under the enforcement clause of the Fourteenth Amendment by enacting it.

84.     FACE is a criminal statute that by its terms has nothing to do with "commerce."

85.     FACE does not contain an express jurisdictional element which might limit its reach.

86.     The link between the activity regulated by FACE and interstate commerce is so attenuated that it fails to place any real limit on Congress' power to regulate in violation of the U.S. Constitution.

87.     FACE is unconstitutional because it is the economic nature of the regulated activity itself, not whether the activity may affect some economic enterprises, that matters for Commerce Clause purposes.

88.     As the facts in the underlying civil case demonstrate, FACE is being used by the federal government to regulate matters that are truly local in violation of the U.S. Constitution.

89.     FACE, on its face and as applied, cannot be enforced in this underlying civil case as Congress was without the authority to enact FACE for this purpose.

90.     The unlawful enforcement of FACE in this case by the Attorney General has caused and will continue to cause Fr. Fidelis to suffer undue hardship and irreparable injury, entitling him to declaratory and injunctive relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

A.      That this Court declare that the Attorney General violated the First Amendment to the United States Constitution as set forth in this pleading;

B.      That this Court declare that the Attorney General violated the Fifth Amendment to the United States Constitution as set forth in this pleading;

C.      That this Court declare that the Attorney General violated RFRA as set forth in this pleading;

D.      That this Court declare that FACE is unconstitutional, facially and as applied, as set forth in this pleading;

E.      That this Court enjoin the enforcement of FACE as this federal statute is unconstitutional facially and as applied as set forth in this pleading;

F.      That this Court declare that the Attorney General, through the prosecution of this civil case against Fr. Fidelis, violated the Tenth Amendment and principles of federalism as set forth in this pleading;

G.      That this Court enjoin the Attorney General and his Department of Justice from selectively enforcing federal law, including FACE, against pro-lifers, including Fr. Fidelis, as set forth in this pleading;

H.      That this Court dismiss this unlawful prosecution against Defendants, including Fr. Fidelis;

I.      That this Court award Fr. Fidelis damages, including nominal damages, against the Attorney General for violating RFRA;

J.      That this Court award Fr. Fidelis his reasonable costs, including attorneys' fees, pursuant to 5 U.S.C. § 504, 28 U.S.C. § 1920, 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court;

K.      That this Court grant such other and further relief as it deems equitable and just under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Fr. Fidelis hereby demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (MIP62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

*Counsel for Defendant/Third-Party Plaintiff*
*Christopher Moscinski*