## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:24CV893** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **CITIZENS FOR A PRO-LIFE** | ) | |
| **SOCIETY, INC., et al.,** | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #29) of Defendants Citizens for a Pro-Life Society, Inc.; Red Rose Rescue; Monica Miller; Lauren Handy; and Jay Smith (joined per August 28, 2024 Court Order) to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the Motion is denied.

### I. BACKGROUND

On May 20, 2024, Plaintiff United States of America brought this action against Defendants Citizens for a Pro-Life Society, Inc.; Red Rose Rescue; Laura Gies; Lauren Handy; Clara McDonald; Monica Miller; Christopher Moscinski; Jay Smith and Audrey Whipple, seeking damages and injunctive relief under the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248.  Plaintiff alleges that Defendants have committed and will continue to commit violations of the FACE Act which have and will continue to injure, intimidate and/or interfere with persons who provide or obtain reproductive health services.

Defendant Citizens for a Pro-Life Society, Inc. ("CPLS") is a Michigan nonprofit corporation organized to "form a public charity . . . that provides support to Pro-Life causes by

raising awareness of critical and emerging human life issues through newsletters, website blogs and other public activities." (Complaint, ECF DKT #1 at ¶¶ 7-8). Defendant Monica Miller is a Michigan resident who incorporated CPLS and has served as its president since 2009. In 2015, CPLS and Miller formed the Red Rose Rescue ("RRR") group. Defendants CPLS and Miller "manage, operate, finance, organize and support Defendant RRR and RRR events." (*Id.*, ¶ 34).

RRR is a group that conducts broad, coordinated efforts to temporarily prevent abortions in facilities across several states. According to Plaintiff's allegations, RRR participants enter a facility; occupy space in the waiting room; pass out red roses to those seeking reproductive health services; protest abortion procedures; refuse to leave voluntarily; and require police officers to physically remove them from the premises. Often while several RRR participants are inside, a group remains outside to act as spokespersons and witnesses and to photograph the event. (*Id.*, ¶ 25). The participants understand that they will likely be arrested and prosecuted; but they remain in order to prevent as many abortion services as possible. (*Id.*, ¶ 28).

Defendants organized and participated in two events in Northeast Ohio, resulting in partial or complete closures of the facilities for the day: On June 4, 2021, at Northeast Ohio Women's Center ("NOWC") and on June 5, 2021, at Planned Parenthood of Greater Ohio's Bedford Heights Surgery Center ("BHSC"). By force or threat of force or by physical obstruction, Defendants "(1) intentionally injured, intimidated, or interfered with, or attempted to injure, intimidate or interfere with, persons because those persons were, or had been, obtaining or providing reproductive health services; or (2) intimidated such persons or any other person or class of persons from obtaining or providing reproductive health services." (*Id.*, ¶¶ 62, 98). Defendants' actions resulted in partial or full closure of the NOWC and BHSC facilities, made

ingress to or egress from the facilities impassable and/or rendered passage unreasonably difficult or hazardous.  (*Id.*, ¶¶ 63, 99).

On June 4, 2021, Defendants Moscinski and Whipple entered the Northeast Ohio Women's Center ("NOWC") waiting room through the front entrance.  Defendants Gies and McDonald entered the NOWC waiting room via the back entrance, claiming to be seeking reproductive health services.  (*Id.*, ¶ 46).  Defendants Gies, McDonald, Moscinski and Whipple handed out roses to the patients while encouraging them not to have abortions.  Defendants attempted to interact with patients and ignored the staff's requests to leave.  NOWC staff evacuated patients to a secured portion of the clinic.  (*Id.*, ¶¶ 47-49).  All four Defendants used their bodies to physically occupy nearly the entirety of the NOWC waiting room by lying down or kneeling on the floor.  (*Id.*, ¶ 52).  The Cuyahoga Falls Police were called.  At approximately 12:00 p.m. and because Defendants refused to leave, they were arrested and physically carried by police officers from the building, across the parking lot and into police vehicles.  "While Defendants Gies, McDonald, Moscinski, and Whipple were inside NOWC with the police, Defendant Miller was immediately outside the facility and stated, 'The police have arrived and hopefully [the Defendants] have an opportunity to stall as long as possible.  It's our experience that as long as there is a pro-life presence inside these abortion centers, the killing is halted.  And they are not going to leave.'" (*Id.*, ¶ 57).

On June 5, 2021, Defendants CPLS, RRR, Handy, Miller and Smith unlawfully entered onto BHSC property.  At around 9:00 a.m. that morning, Defendants Handy and Miller approached and attempted to speak to patients in their cars in the private, fenced-in parking lot.  (*Id.*, ¶ 67).  Allegedly, Handy and Miller tried to force the patients to take brochures and roses.

(*Id*., ¶ 68).  At approximately the same time, Defendant Smith entered the BHSC building and passed out brochures in the waiting room, which allegedly upset patients and staff.  (*Id*., ¶¶ 69-70).  "When a patient asked Smith to leave the facility, Smith used physical force against the patient by pushing him with his shoulder." (*Id*., ¶ 71).  BHSC staff evacuated patients into a secured area of the facility for their protection.  (*Id*., ¶ 73).  Bedford Heights Police Department officers arrived and instructed the RRR participants to leave the BHSC property and the adjoining private property.  (*Id*., ¶ 77).  Instead of complying, Defendant Handy knelt directly in front of the entry door; and Defendant Miller continued to approach cars in the parking lot, laid on the ground behind one patient's vehicle, stood next to the car doors and prevented patients from exiting their vehicles.  (*Id*., ¶¶ 78-81).  Ultimately, the police arrested Defendants Handy and Miller and carried them to the police cars.  (*Id*., ¶¶ 85-86).  The police continued to deal with RRR participants who were blocking the entrance to the private parking lot.  (*Id*., ¶ 89).  The Bedford Heights police supervisor asked BHSC management to close the facility for the day because there were not enough available officers to handle the continuous disruptions.  (Id., ¶ 94).  BHSC agreed; and the closure impacted staff and 24 patients.  (*Id*., ¶¶ 95-96).

By force, threat of force or physical obstruction, Defendants CPLS, RRR, Handy, Miller and Smith "intentionally injured, intimidated, or interfered with, or attempted to injure, intimidate or interfere with, persons because those persons were, or had been, obtaining or providing reproductive health services; or intimidated such persons or any other person or class of persons from obtaining or providing reproductive health services." (*Id*., ¶ 98).  The unlawful actions of CPLS, RRR, Handy, Miller and Smith at BHSC, along with the subsequent closure of the facility, "made ingress to or egress from BHSC impassable and/or rendered passage

unreasonably difficult or hazardous."  (*Id.*, ¶ 99).

Defendants Citizens for a Pro-Life Society, Inc., Red Rose Rescue, Monica Miller, Lauren Handy and Jay Smith move for dismissal of the Complaint because:  (1) the FACE Act is unconstitutional as there is no federal right to abortion post-*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022); (2) the FACE Act exceeds Congress's Commerce Clause powers; (3) the FACE Act is unconstitutional as a content-based regulation of speech that fails to satisfy strict scrutiny; and (4) the FACE Act violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA").

Plaintiff argues in opposition that:  (1) the FACE Act is a valid exercise of Congress's Commerce Clause authority and remains so following the *Dobbs* decision; (2) Defendants' alleged conduct is not protected by the First Amendment; and (3) Defendants' alleged conduct is not protected by the RFRA.

## II. LAW AND ANALYSIS

### Fed.R.Civ.P. 12(b)(6) Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  The United States

Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided

additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss
> can choose to begin by identifying pleadings that, because
> they are no more than conclusions, are not entitled to the assumption
> of truth. While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations. When there
> are well-plead factual allegations a court should assume their veracity
> and then determine whether they plausibly give rise to an entitlement
> to relief.  *Id*. at 679.

However, "where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the

pleader is entitled to relief.'"  *Id*.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint

and any exhibits attached thereto, public records, items appearing in the record of the case and

exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint

and are central to the claims contained therein.  See *Amini v. Oberlin Coll.*, 259 F.3d 493, 502

(6th Cir. 2001).

**The FACE Act, 18 U.S.C. § 248**

In pertinent part, the Act provides that:

Whoever (1) by force or threat of force or by physical obstruction, intentionally
injures, intimidates, or interferes with or attempts to injure, intimidate, or interfere
with any person because that person is or has been, or in order to intimidate such
person or any other person or any class of persons from, obtaining or providing
reproductive health services . . . shall be subject to the . . . civil remedies provided
in subsection (c).  18 U.S.C. § 248(a).

The relevant definitions used in this section include:

(1) **Facility**.--The term "facility" includes a hospital, clinic, physician's office or other

facility that provides reproductive health services, and includes the building or structure in which the facility is located.

(2) **Interfere with**.--The term "interfere with" means to restrict a person's freedom of movement.

(3) **Intimidate.**--The term "intimidate" means to place a person in reasonable apprehension of bodily harm to him- or herself or to another.

(4) **Physical obstruction.**--The term "physical obstruction" means rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous.

(5) **Reproductive health services.**--The term "reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

**<u>Norton v. Ashcroft</u>**

The Sixth Circuit, in *Norton v. Ashcroft*, 298 F.3d 547 (2002), upheld the constitutionality of the FACE Act, finding that Congress validly enacted the FACE Act pursuant to its Commerce Clause power. (*Id.* at 558). Moreover, the *Norton* court held that the Act does not, on its face, violate the First Amendment. (*Id*. at 552). To the extent that protected expression is implicated, the Act "does so in a content-neutral manner." (*Id*. at 553). Along with every Circuit to consider the issue, the Sixth Circuit further ruled that the Act is not impermissibly vague. (*Id.*).

## Constitutional Issues

In *Mathews v. Ohio Public Employees Retirement System*, 91 F.Supp.3d 989, 996

(S.D.Ohio 2015), the district court discussed constitutional challenges to a statute:

> A court may hold a statute unconstitutional either because it is invalid "on its
> face" or because it is unconstitutional "as applied" to a particular set of
> circumstances. Each holding carries an important difference in terms of outcome:
> If a statute is unconstitutional as applied, the State may continue to enforce the
> statute in different circumstances where it is not unconstitutional, but if a statute is
> unconstitutional on its face, the State may not enforce the statute under any
> circumstances. Traditionally, [the] burden in an as-applied challenge is different
> from that in a facial challenge.  In an as-applied challenge, [the challenging party]
> contends that application of the statute in the particular context in which he has
> acted, or in which he proposes to act, would be unconstitutional." *Ada v. Guam
> Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1012, 113 S.Ct. 633,
> 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting), denying cert. to 962 F.2d
> 1366 (9th Cir.1992).

"Facial challenges are disfavored ...."  *Washington State Grange v. Washington State*

*Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008).

"In contrast to an as-applied challenge, which argues that a law is unconstitutional as

enforced against plaintiffs before a court, a facial challenge is not an attempt to invalidate the law

in a discrete setting but an effort to leave nothing standing."  *Speet v. Schuette*, 726 F.3d 867 (6th

Cir. 2013) at headnote 2.

The Sixth Circuit instructed in *Connection Distributing Co. v. Holder,* 557 F.3d 321,

327-328 (6th Cir. 2009):

> The "usual judicial practice" is to address an as-applied challenge before a facial
> challenge because . . .  this approach avoids encouraging "gratuitous wholesale
> attacks upon state and federal laws." *Bd. of Trs. of the State Univ. of N.Y. v. Fox*,
> 492 U.S. 469, 484–85, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

-8-

**Constitutionality Post-*Dobbs***

In *Dobbs*, the Supreme Court overruled *Roe v. Wade*, declared that the Constitution does not confer a right to abortion and returned the authority to regulate abortion to the people and their elected representatives.  Consequently, Defendants assert that the FACE Act has lost its purpose and its constitutional validity.  The Court finds that this argument is without merit.

The FACE Act does not rely upon the existence of a fundamental right to abortion.  The Act serves a governmental interest in prohibiting force, threatened force and physical obstruction in clinics offering reproductive health services.

The Sixth Circuit, in *Norton v. Ashcroft*, upheld the constitutionality of the FACE Act pursuant to the Commerce Clause.  The *Norton* panel found that patients often travel interstate to obtain reproductive health services; physicians travel interstate to provide such services; and clinics often purchase medicine, medical supplies, instruments and other medical supplies from other states.  *Norton*, 298 F.3d at 558.  These facts are no less true after the *Dobbs* decision.  The Court is bound by *stare decisis* to adhere to published Sixth Circuit precedent which has not been reversed by an *en banc* opinion of that appellate court nor overruled by the U.S. Supreme Court.

"[T]he power to regulate interstate commerce—was not at issue in *Dobbs*."  *United States v. Gallagher*, 680 F.Supp.3d 886, 893 (M.D.Tenn. 2023).  The *Gallagher* opinion continues at 894:

> Congress's reliance on its commerce powers, therefore, was not based on any issue addressed by *Dobbs*, but on the fact that reproductive health services are part of the healthcare field, which is deeply bound up in interstate commerce and which is already heavily regulated by federal law, such as through federal oversight of pharmaceutical safety and federal safeguarding of the privacy of medical records.

Defendants further contend that Congress violated the principles of federalism and the

Tenth Amendment when it enacted the FACE Act.  The Government is using the FACE Act to punish trespass which is already prohibited under state law and for which many of the named Defendants have been charged and convicted.  However, as alleged in the instant Complaint and as discussed in *Norton*, Congress found activities like Defendants' to be "organized and directed across state lines, and that the problem was increasingly beyond the scope of local and state authorities."  *Norton*, 298 F.3d at 559.

As this Court found previously with regard to other Defendants in this case, the FACE Act is not being utilized to punish a "simple trespass."  Rather, the Act prohibits "physical obstruction" of individuals obtaining or providing reproductive health services and  "forbids physical interference with people going about their own lawful private business."  See *United States v. Dinwiddie*, 76 F.3d 913, 924 (8th Cir. 1996).

Defendants make the additional challenge that the FACE Act is facially unconstitutional because it discriminates against expressive activity based on content and viewpoint.  The binding *Norton* decision upheld the FACE Act against such First Amendment Free Speech challenges.  "[T]he Act applies to anyone who violates its terms, regardless of ideology or message."  *Norton*, 298 F.3d at 553.  FACE prohibits interference with the commercial activity of providing or receiving reproductive health services whether or not the offenders' conduct is "motivated by non-commercial sentiment – namely, staunch moral opposition to abortion."  *Id.* at 556.

Lastly, Defendants attack the FACE Act for violating the Religious Freedom Restoration Act ("RFRA").  The RFRA requires "that the federal "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government "demonstrates that application of the burden to the person

-10-

... is in furtherance of a compelling governmental interest; and ... is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)–(b).  Defendants contend that their activities on June 4 and June 5, 2021 were indisputably religiously motivated. Yet, Defendants have not shown that the *exercise* of their religion has been substantially burdened or that their religion requires them to physically or forcibly obstruct clinic entrances.

> [I]t is highly questionable whether the FACE Act actually burdens the exercise of religion in any meaningful way, because it does not restrict any person's power to express his support or opposition to abortion on religious grounds, as long as the person does not engage in the kinds of threats or invasions of person or property that are routinely considered unlawful. See *Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995) (cited in *Gallagher,* 680 F.Supp.3d at 903).

The finding of a "substantial burden" on religious exercise is a "high hurdle" and is "fact-intensive." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F.App'x 729, 734 (6th Cir. 2007).

## III. CONCLUSION

In light of the binding holding in *Norton v. Ashcroft*, and because the Complaint states plausible claims under the FACE Act, the Motion (ECF DKT #29) of Defendants Citizens for a Pro-Life Society, Inc.; Red Rose Rescue; Monica Miller; Lauren Handy; and Jay Smith (joined by August 28, 2024 Court Order) to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

**IT IS SO ORDERED.**

**DATE: 1/3/2025**        s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**