# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff/Counterclaim<br>                     Defendant,<br><br>     v.<br><br>CITIZENS FOR A PRO-LIFE SOCIETY,<br>INC., *et al.*,<br><br>                     Defendants,<br><br>CHRISTOPHER MOSCINSKI,<br><br>                     Defendant/Third-Party<br>                     Plaintiff,<br><br>     v.<br><br>MERRICK GARLAND, individually and in<br>his official capacity as Attorney General of the<br>United States of America,<br><br>                     Third-Party Defendant. | Civil Docket No. 1:24-cv-00893-CAB |

## MOTION TO DISMISS CHRISTOPHER MOSCINSKI'S OFFICIAL-CAPACITY CLAIMS AGAINST THE UNITED STATES AND THE ATTORNEY GENERAL

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES .................................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................................... 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD .................................................................................................. 4

ARGUMENT ............................................................................................................... 4

I.      THE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT SHOULD BE
        DISMISSED AS DUPLICATIVE OF MOSCINSKI'S AFFIRMATIVE
        DEFENSES ....................................................................................................... 4

II.     THE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT FAIL TO
        STATE A CLAIM ............................................................................................. 6

        A.      Moscinksi's Fifth Amendment Selective Prosecution Claim Should Be
                Dismissed ............................................................................................... 6

                1.      Moscinski Has Not Plausibly Alleged Discriminatory Effect ................... 7

                2.      Moscinski Has Not Plausibly Alleged Discriminatory Purpose ............... 9

        B.      Moscinski's First Amendment Claim Should Be Dismissed............................... 10

        C.      Moscinski's RFRA Claim Should Be Dismissed ................................................. 12

        D.      Moscinski's Commerce Clause Claim Should Be Dismissed ............................. 14

        E.      Moscinski's Tenth Amendment Claim Should Be Dismissed............................. 15

CONCLUSION ............................................................................................................. 17

i

# TABLE OF AUTHORITIES

## Cases

*Am. Life League, Inc. v. Reno*,
    47 F.3d 642 (4th Cir. 1995) ....................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ 4

*Cheffer v. Reno*,
    55 F.3d 1517 (11th Cir. 1995) ............................................................... *passim*

*Elec. Merch. Sys. LLC v. Gaal*,
    58 F.4th 877 (6th Cir. 2023) ........................................................................ 9

*FDIC v. Fid. Nat'l Title Ins. Co.*,
    No. 14-13706, 2015 WL 2237877 (E.D. Mich. May 12, 2015) ........................... 4, 5

*Gardenhire v. Schubert*,
    205 F.3d 303 (6th Cir. 2000) ........................................................................ 7

*Libertarian Party of Ohio v. Husted*,
    831 F.3d 382 (6th Cir. 2016) ........................................................................ 7

*Malibu Media, LLC v. Doe 1*,
    No. DKC 12-1198, 2012 WL 6681990 (D. Md. Dec. 21, 2012) ........................... 5

*McCleskey v. Kemp*,
    481 U.S. 279 (1987)........................................................................................ 9

*New York v. United States*,
    505 U.S. 144 (1992)................................................................................ 15, 16

*Norton v. Ashcroft*,
    298 F.3d 547 (6th Cir. 2002) .............................................................. 3, 10, 14, 15

*Printz v. United States*,
    521 U.S. 898 (1997)...................................................................................... 16

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)................................................................................ 6, 10

*Scheurer Hosp. v. Lancaster Pollard & Co.*,
    No. 12-11536, 2013 WL 173268 (E.D. Mich. Jan. 16, 2013) ........................... 5

*Stemler v. City of Florence,*
      126 F.3d 856 (6th Cir. 1997) .......................................................................... 7

*Terry v. Reno,*
      101 F.3d 1412 (D.C. Cir. 1996) ................................................................. 10, 14

*United States v. Armstrong,*
      517 U.S. 456 (1996) .................................................................................... 6, 7

*United States v. Bird,*
      124 F.3d 667 (5th Cir. 1997) .................................................................... 10, 14

*United States v. Brock,*
      863 F. Supp. 851 (E.D. Wis. 1994) ........................................................... 12, 14

*United States v. Davis,*
      906 F.2d 829 (2d Cir. 1990) ........................................................................ 16

*United States v. Dinwiddie,*
      76 F.3d 913 (8th Cir. 1996) ..................................................................... 10, 14

*United States v. Dinwiddie,*
      885 F. Supp. 1286 (W.D. Mo. 1995) ......................................................... 12, 14

*United States v. Gallagher,*
      680 F. Supp. 3d 886 (M.D. Tenn. 2023) ................................................... *passim*

*United States v. Gregg,*
      226 F.3d 253 (3d Cir. 2000) ..................................................................... 10, 14

*United States v. Harlow,*
      No. 22-096-10 (CKK), 2023 WL 4706123 (D.D.C. July 24, 2023) ................... 8, 10

*United States v. Houck,*
      No. 22-cr-323, 2023 WL 144117 (E.D. Pa. Jan. 10, 2023) ............................ *passim*

*United States v. Johnson,*
      114 F.3d 476 (4th Cir. 1997) .................................................................... 16, 17

*United States v.Soderna,*
      82 F.3d 1370 (7th. Cir. 1996) ........................................................................ 14

*United States v. Owens,*
      996 F.2d 59 (5th Cir. 1993) .......................................................................... 16

*United States v. Weslin,*
      156 F.3d 292 (2d Cir. 1998) ................................................................. 10, 12, 14

iii

*United States v. Weslin*,
     964 F. Supp. 83 (W.D.N.Y. 1997) ................................................................. 12, 14

*United States v. Williams*,
     701 F. Supp. 3d 257 (S.D.N.Y. 2023) .................................................. 8, 10, 12, 13

*United States v. Wilson*,
     154 F.3d 658 (7th Cir. 1998) ........................................................................ 10

*United States v. Yoon*,
     398 F.3d 802 (6th Cir. 2005) ........................................................................ 15

*United States v. Zanfei*,
     353 F. Supp. 2d 962 (N.D. Ill. 2005) ............................................................... 5

*United States v. Zastrow*
     No. 3:22-cr-00327, 2024 WL 3558363 (M.D. Tenn. July 26, 2024) ........................... 8

*Vaher v. Town of Orangetown*,
     916 F. Supp. 2d 404 (S.D.N.Y. 2013) ............................................................... 8

*Wachovia Bank v. Watters*,
     431 F.3d 556 (6th Cir. 2005) ........................................................................ 15

*Webman v. Fed. Bureau of Prisons*,
     441 F.3d 1022 (D.C. Cir. 2006) .................................................................... 12

*XL Specialty Ins. Co. v. Truland*,
     No. 1:14-cv-1058 JCC/JFA, 2015 WL 925595 (E.D. Va. Mar. 3, 2015) ..................... 4, 5

## **Statutes**

18 U.S.C. § 248 ............................................................................................. 1, 2, 3

42 U.S.C. § 2000bb-1(a) ................................................................................... 12

## STATEMENT OF THE ISSUES

The threshold issue to be decided is whether the defendant, Christopher Moscinski, can assert counterclaims against the United States and third-party claims against the Attorney General in his official capacity that are duplicative of Moscinski's affirmative defenses in the primary case against Moscinski.

If the Court does not dismiss the counterclaims and third-party claims for this threshold reason, then the Court should consider whether Moscinski's counterclaims validly state a claim under (i) the Fifth Amendment's equal protection guarantee for selective prosecution, (ii) the First Amendment, (iii) the Religious Freedom Restoration Act ("RFRA"), (iv) the Commerce Clause, and (v) the Tenth Amendment.

## SUMMARY OF THE ARGUMENT

The United States brought this action to enforce the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248, against two organizations and seven individuals, including Christopher Moscinski.  After this Court denied Moscinski's motion to dismiss the complaint, Moscinski filed an answer and affirmative defenses, including defenses that the FACE Act is unconstitutional.  Moscinski also seeks to assert counterclaims against the United States and a third-party complaint against the Attorney General in his official capacity,[1] raising the same constitutional arguments that he has asserted as affirmative defenses.  As explained below, Moscinski's counterclaims and third-party complaint should be dismissed for multiple, independent reasons.  Indeed, defendants in FACE Act cases have repeatedly made the same arguments that Moscinski makes here, and courts have uniformly rejected them.

---

[1] This brief will refer to the United States and the Attorney General in his official capacity as the "official-capacity defendants."  Moscinski has also brought claims against the Attorney General in his individual capacity, and those claims are addressed in a separate brief.

As an initial matter, Moscinksi's counterclaims and third-party complaint should be dismissed because they are duplicative of his affirmative defenses to the United States' enforcement action.  Courts routinely dismiss counterclaims that simply mirror a party's affirmative defenses, and the Court should do so here.

Even if the Court were to reach the merits, however, each of Moscinski's claims is meritless and should be dismissed for failure to state a claim.  Moscinski's Fifth Amendment "selective enforcement" claim fails because he cannot plausibly allege that the government has acted either with a discriminatory effect or purpose.  His First Amendment claim fails because it is merely a repackaging of his Fifth Amendment claim, and also because he cannot plausibly allege any infringement of his freedom of speech or expressive association.  His RFRA claim fails because the FACE Act does not substantially burden his religious exercise and serves a compelling government interest, as numerous courts have recognized.  His Commerce Clause claim fails because binding Sixth Circuit precedent holds that Congress validly exercised its Commerce Clause power in enacting the FACE Act.  And his Tenth Amendment claim fails because the enforcement of the FACE Act against him is an exercise of power delegated to the United States by the Constitution.

## BACKGROUND

The Court is familiar with the factual background of this case.  *See* ECF No. 39-1 (order denying Moscinski's motion to dismiss).  The United States brought this action against Moscinski in May 2024 for violations of the FACE Act.  Congress passed the FACE Act in 1994 to protect access to reproductive health services and places of religious worship.  *See* 18 U.S.C. § 248.  The complaint alleges that on June 4, 2021, Moscinski violated the FACE Act by entering the Northeast Ohio Women's Center and, by "physical obstruction," intentionally

2

attempted to, or in fact did, "intimidate" or "interfere with" persons because those persons tried to provide or obtain "reproductive health services."  *See id.* § 248(a)(1).

Moscinski moved to dismiss the complaint, contending that the complaint failed to state a claim.  *See* ECF No. 25.  Moscinski also argued that the application of the FACE Act to his conduct violated the First Amendment, the Tenth Amendment, and principles of federalism.  *Id.*

This Court denied Moscinski's motion to dismiss, holding that the complaint plausibly stated a claim against Moscinski for violating the FACE Act.  ECF No. 39-1 at 7.  The Court rejected Moscinski's argument that the FACE Act was being used to punish "a simple trespass," as the government had plausibly alleged that Moscinski engaged in physical obstruction and intimidated and/or interfered with (or attempted to intimated or interfere with) individuals because they tried to obtain or provide reproductive health services.  *Id.*  As to Moscinski's constitutional challenges, the Court recognized that the Sixth Circuit has "upheld the constitutionality of the FACE Act."  *Id.* at 5–6 (citing *Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002)).  The Court likewise denied Moscinski's motion to dismiss based on the Tenth Amendment and principles of federalism, holding that his as-applied challenge did not provide a basis to dismiss.  *Id.* at 9–10.

Moscinski then filed an answer, which included as affirmative defenses that the enforcement action violated the (i) equal protection guarantee of the Fifth Amendment, (ii) First Amendment, (iii) the Religious Freedom Restoration Act, (iv) Commerce Clause, and (v) the Tenth Amendment and principles of federalism.  *See* Affirmative Defenses at 3–6, 8, ECF No. 41.  Moscinski then included these same constitutional arguments as "counterclaims" against the United States and "third-party claims" against the Attorney General.  *See* Counterclaims & Third-Party Complaint Counts I–V ("Counterclaims"), ECF No. 41.

The official-capacity defendants now move to dismiss Moscinski's counterclaims against them.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663 (citation omitted). Legal conclusions couched as factual allegations are not sufficient. *Twombly*, 550 U.S. at 555.  Thus, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Nor will a complaint that offers mere "naked assertion[s]" devoid of "further factual enhancement."  *Id.*  (citation omitted).

## ARGUMENT

## I.  THE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT SHOULD BE DISMISSED AS DUPLICATIVE OF MOSCINSKI'S AFFIRMATIVE DEFENSES

As a threshold matter, Moscinski's claims against the official-capacity defendants should be dismissed because they are duplicative of his affirmative defenses.  *Compare* Counterclaim Counts I–V, *with* Affirmative Defenses 3–6, 8.

Courts throughout the country have repeatedly recognized that "[w]here a counterclaim mirrors an affirmative defense," the counterclaims should be "dismissed."  *XL Specialty Ins. Co. v. Truland*, No. 1:14-cv-1058 JCC/JFA, 2015 WL 925595, at *2 (E.D. Va. Mar. 3, 2015) (collecting cases); *see also, e.g.*, *FDIC v. Fid. Nat'l Title Ins. Co.*, No. 14-13706, 2015 WL 2237877, at *3 (E.D. Mich. May 12, 2015) (dismissing as "superfluous" counterclaim that relied

4

on same legal theory as affirmative defense); *Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-11536, 2013 WL 173268, at *12 (E.D. Mich. Jan. 16, 2013) (dismissing duplicative counterclaim and noting "[w]hat is really an answer or defense to a suit does not become an independent piece of litigation because of its label" (citation omitted)); *Malibu Media, LLC v. Doe 1*, No. DKC 12-1198, 2012 WL 6681990, at *3 (D. Md. Dec. 21, 2012) ("Courts have typically declined to consider counterclaims for declaratory relief that are duplicative of affirmative defenses."); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (noting that it is "well settled" that courts may dismiss duplicative counterclaims).

Here, Moscinski's "counterclaims" against the United States and third-party claims against the Attorney General in his official capacity "mirror" his affirmative defenses and should be dismissed. *XL Specialty*, 2015 WL 925595, at *2. For example, Moscinski asserts as a counterclaim that the application of the FACE Act against him violates the Commerce Clause. *See* Counterclaims ¶ 81-90. But this "counterclaim" is identical to Moscinski's eighth affirmative defense, which contends that "the application of FACE to the facts of this case violates . . . the Commerce Clause." *See* Affirmative Defense 8.

With these affirmative defenses to the enforcement action squarely before the Court, the Court has the opportunity to address Moscinski's constitutional arguments in that context. Consequently, there is no reason or basis for the Court to permit Moscinski to bring counterclaims or third-party claims raising these same arguments. Indeed, while FACE Act defendants routinely make the same constitutional arguments that Moscinski makes here, they have done so in the context of motions to dismiss or affirmative defenses. *See, e.g.*, *United States v. Gallagher*, 680 F. Supp. 3d 886, 897 (M.D. Tenn. 2023); *United States v. Houck*, No. 22-cr-323, 2023 WL 144117 (E.D. Pa. Jan. 10, 2023). They have not brought such arguments as

5

independent counterclaims or third-party claims against the government, as Moscinski has sought to do here.  There is simply no reason why Moscinski's legal arguments can or should be raised as independent counterclaims, as opposed to being decided as defenses in the original enforcement action.

Accordingly, because the counterclaims and third-party claims are duplicative of Moscinski's affirmative defenses, the Court should dismiss them.

## II.    THE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT FAIL TO STATE A CLAIM

The above threshold argument is fully adequate to justify dismissal of the claims against the official-capacity defendants.  Thus, the Court need not reach the substance of Moscinski's claims in order to dismiss the counterclaims and third-party complaint.  To the extent the Court rejects the threshold argument, however, Moscinski's counterclaims and third-party complaint should be dismissed for the additional reason that they fail to state a valid claim for relief.

### A.    Moscinksi's Fifth Amendment Selective Prosecution Claim Should Be Dismissed

In bringing a Fifth Amendment selective prosecution claim, Moscinski faces a "particularly demanding" standard.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999).  As one court recently recognized in rejecting a selective enforcement claim by FACE Act defendants, "Under Article II . . . , the Executive Branch possesses authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law."  *Gallagher*, 680 F. Supp. 3d at 897 (citation omitted).  "The power of the courts to disturb the Government's decision to pursue one defendant more aggressively than another is therefore markedly limited."  *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  The defendant must "displac[e] the presumption that [the government] has acted lawfully."  *Reno*, 525 U.S. at 489.

6

To state a selective enforcement claim under the Fifth Amendment, the defendant must plausibly allege that the enforcement at issue has both a "discriminatory effect" and a "discriminatory purpose."  *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 394 (6th Cir. 2016) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).  Moscinski has not plausibly alleged either element.

       1.   <u>Moscinski Has Not Plausibly Alleged Discriminatory Effect</u>

To plausibly allege discriminatory effect for purposes of a selective prosecution claim, a defendant must identify similarly situated individuals of a different class against whom no enforcement action was brought.  *See Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000); *Armstrong*, 517 U.S. at 465 (discussing standard in criminal context).

Courts have repeatedly rejected "selective enforcement" challenges to FACE Act prosecutions where, as here, the defendant had not identified a similarly situated individual.  For example, in *Gallagher*, the defendants, like Moscinski, contended that the government was selectively enforcing the FACE Act against them because it "[had] not brought enough prosecutions . . . against individuals who have interfered with the operation of 'crisis pregnancy centers,'" which are "intended to provide reproductive health-related services and counseling from an anti-abortion perspective."  680 F. Supp. 3d at 898.  The court held that these generalized allegations were insufficient—defendants "ha[d] not identified a single known and identified abortion-supporting FACE violator who has escaped prosecution, despite having engaged in the same kind of acts that these defendants have been accused of performing."  *Id.*

Similarly, in *Houck*, the court rejected the defendant's selective-enforcement challenge to a FACE Act prosecution where the defendant failed to identify a similarly situated individual of a different group who was not prosecuted.  2023 WL 144117 at *3.  Although the defendant had attempted to show that one particular individual was similarly situated, the court found that that

7

individual had not "committed the same crime, in substantially the same manner." *Id.* at *3.  The court further held that the defendant's generalized assertion that the government fails to prosecute "violence against pro-life pregnancy centers and churches nationwide" was insufficient to demonstrate his selective prosecution claim.  *Id.* (citation omitted); *see also United States v. Zastrow*, No. 3:22-cr-00327, 2024 WL 3558363, at *2 (M.D. Tenn. July 26, 2024) (rejecting selective prosecution challenge to FACE Act prosecution); *United States v. Williams*, 701 F. Supp. 3d 257, 267 (S.D.N.Y. 2023) (same); *United States v. Harlow*, Crim A. No. 22-096-10 (CKK), 2023 WL 4706123, at *2 (D.D.C. July 24, 2023) (same); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing selective enforcement claim because plaintiff did not identify similarly situated individuals).

Moscinski makes precisely the same "discriminatory effect" argument that these courts have rejected.  Moscinski does not identify any similarly situated individual against whom an enforcement action was not brought.  Instead, Moscinski generally alleges that the government has "turn[ed] a blind eye to the violent actions of left-wing groups like Antifa and groups aligned with the Black Lives Matter political movement."  Counterclaims ¶ 27.  Those groups, however, are not alleged to have violated the FACE Act, and so cannot possibly be "similarly situated" for purposes of a selective enforcement claim.  *See Houck*, 2023 WL 144117, at *3 (defendant must identify individual who "committed the same crime").

Moscinski also alleges that the government has "refuse[d] to target for law enforcement action Jane's Revenge," a group that Moscinski says has interfered with the operation of crisis pregnancy centers.  Counterclaims ¶ 37.  But the district court rejected the same generalized allegations in *Gallagher*, 680 F. Supp. 3d at 898, where defendants "ha[d] not identified a single known and identified abortion-supporting FACE violator" who committed the same kind of act.

*Id.*  Indeed, contrary to Moscinski's generalized allegation that the government has "refused" to bring enforcement actions against members of Jane's Revenge, the government *has* in fact prosecuted three individuals aligned with Jane's Revenge for violating the FACE Act.  *See United States v. Rivera*, No. 23-cr-25 (M.D. Fla.); *United States v. Freestone*, No. 23-cr-25 (M.D. Fla.); *United States v. Smith-Stewart*, No. 23-cr-25 (M.D. Fla.).[2]

Accordingly, because Moscinski has not identified a similarly situated individual against whom no enforcement action was brought, he cannot plausibly allege discriminatory effect.

### 2.      Moscinski Has Not Plausibly Alleged Discriminatory Purpose

Nor has Moscinski plausibly alleged discriminatory purpose.  To do so, Moscinski would have to allege facts suggesting that the government brought the enforcement action "*because of*, not merely in spite of, its adverse effects upon an identifiable group."  *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (emphasis added) (quotations omitted).

Moscinski offers no well-pleaded factual allegations suggesting that the government chose to prosecute him because he is pro-life.  Moscinski makes a conclusory assertion that the Attorney General has a "policy directive" of "selectively enforcing federal law against pro-lifers."  Counterclaims ¶ 15.  But Moscinski offers no factual allegations to support this conclusory assertion.  Moscinski does not point to any written or verbal "policy directive."  Instead, he cites to a statement by the Associate Attorney General that the Supreme Court's decision in *Dobbs* "increas[ed] the urgency of [the Department's] work," including enforcement of the FACE Act, to ensure continued lawful access to reproductive services.  *Id.* ¶ 13.  But this statement says nothing about selectively enforcing the FACE Act at all, let alone about targeting individuals who are pro-life.

---

[2] The Court may take judicial notice of these "matters of public record" in considering a motion to dismiss.  *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

Moscinksi's counterclaims contain no other well-pleaded factual allegations that come close to suggesting that the government has acted with a discriminatory purpose.  Moscinski notes that one other FACE Act defendant, Mark Houck, was acquitted, but that of course does not suggest a discriminatory purpose.  *Id.* ¶ 22.  Nor does the fact that law enforcement officers carried weapons while effectuating an arrest suggest discrimination.  *See id.* ¶ 24.  In short, Moscinski points to nothing that could overcome the presumption that the government "has acted lawfully" in enforcing the FACE Act against him.  *Reno*, 525 U.S. at 489.  Like the multiple other FACE Act defendants who have made this argument before him, Moscinski has failed to plausibly allege discriminatory purpose.  *See, e.g.*, *Gallagher*, 680 F. Supp. 3d at 898-99; *Williams*, 701 F. Supp. 3d at 267; *Harlow*, 2023 WL 4706123, at *2.

**B.      Moscinski's First Amendment Claim Should Be Dismissed**

Moscinski's First Amendment claim should also be dismissed.  As an initial matter, the Sixth Circuit has squarely held that the FACE Act does not, on its face, violate the First Amendment.  *See Norton*, 298 F.3d at 552.  Every court of appeals to consider the issue has reached the same conclusion.  *See United States v. Gregg*, 226 F.3d 253, 267 (3d Cir. 2000); *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998); *United States v. Wilson*, 154 F.3d 658, 664 (7th Cir. 1998); *United States v. Bird*, 124 F.3d 667, 683–84 (5th Cir. 1997); *Terry v. Reno*, 101 F.3d 1412, 1418–21 (D.C. Cir. 1996); *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996); *Cheffer v. Reno*, 55 F.3d 1517, 1521–22 (11th Cir. 1995); *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648–52 (4th Cir. 1995).

Moscinski seeks to avoid this binding precedent by suggesting that even if the FACE Act itself complies with the First Amendment, the government's "selective enforcement" of the FACE Act against him "and other pro-lifers" violates the First Amendment.  *See* Counterclaims ¶¶ 45–48.  But, as a recent court recognized when another FACE Act defendant made this same

10

argument, Moscinski's First Amendment claim is merely a "repackaging" of the selective

enforcement claim under the Fifth Amendment, and should be rejected for the same reasons.  *See*

*Houck*, 2023 WL 144117, at *4 ("Houck's claim that the Government charged him because of

his views but did not charge those with opposing views engaging in similar conduct is a

repackaging of his selective prosecution claim and fails for the reasons already stated.").

Moscinski's First Amendment selective enforcement claim also fails for the additional

reason that Moscinski has not plausibly alleged that the government infringed his First

Amendment freedom of speech or expressive association.  As explained above, Moscinski

alleges no facts to support his assertion that the government's enforcement decisions have turned

on the "content" or "viewpoint" of speech.  Counterclaims ¶ 45.  Instead, he simply makes a

conclusory assertion that the government has a "policy directive to target pro-lifers," *id.* ¶ 31,

without alleging any facts plausibly suggesting the existence of such a directive.

Nor has Moscinski alleged any facts that would support a claim under the Free Exercise

Clause.  Neutral, generally applicable laws do not violate the Free Exercise Clause, "even if the

law[s] ha[ve] an incidental effect on religious practice."  *Am. Life League*, 47 F.3d at 654.

Courts have repeatedly held that the FACE Act is a generally applicable law that is neutral

toward religion; it does not take religion into account in any way.  *See, e.g.*, *Cheffer*, 55 F.3d at

1522; *Am. Life League*, 47 F.3d at 654.  And, as noted, Moscinski alleges no facts plausibly

suggesting that the government enforces the FACE Act in anything other than a neutral,

generally applicable manner.  Accordingly, Moscinski's First Amendment claim should be

dismissed.

### C.     Moscinski's RFRA Claim Should Be Dismissed

Moscinski's claim seeking declaratory and injunctive relief under RFRA should also be dismissed.[3]  Under RFRA, the federal government may not "substantially burden" a person's exercise of religion "even if the burden results from a rule of general applicability," unless the government shows that the substantial burden "is in furtherance of a compelling government interest; and . . . is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)–(b).

Just like his other arguments, other FACE Act defendants have previously raised RFRA defenses, and numerous federal courts have rejected them, concluding that the FACE Act is compatible with RFRA.  *See Gallagher*, 680 F. Supp. 3d at 902–04 (citing *Cheffer*, 55 F.3d at 1522); *Williams*, 701 F. Supp. 3d at 273–74; *Houck*, 2023 WL 144117, at *4; *Am. Life League, Inc.*, 47 F.3d at 656; *United States v. Weslin*, 964 F. Supp.  83, 88 (W.D.N.Y. 1997), *aff'd*, 156 F.3d 292 (2d Cir. 1998); *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996); *United States v. Brock*, 863 F. Supp. 851, 866–67 (E.D. Wis. 1994), *aff'd*, 82 F.3d 1370 (7th Cir. 1996).  This Court should conclude the same.

Here, even accepting Moscinski's well-pleaded allegations as true for purposes of a motion to dismiss, Moscinski does not allege that enforcement of the FACE Act against him substantially burdens his exercise of religion.  Moscinski contends that his sincerely held religious beliefs "compel him to advocate for the protection of human life," and that enforcement of the FACE Act against him "forc[es] him to remain inactive and silent."  Counterclaims ¶¶ 65,

---

[3] Moscinski has not asserted a claim for damages under RFRA against the official-capacity defendants.  *See* Counterclaims ¶ 3 (noting that Moscinski is seeking damages "against the Attorney General in his *individual* capacity" (emphasis added)).  In any event, any such claim for damages against the official-capacity defendants would be barred by sovereign immunity.  *See, e.g.*, *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("RFRA does not waive the federal government's sovereign immunity for damages").

68.  But, as this Court recently held in rejecting a nearly identical argument by Moscinski's co-

defendants, Moscinski "ha[s] not shown that the *exercise* of [his] religion has been substantially

burdened or that [his] religion requires [him] to physically or forcibly obstruct clinic entrances."

ECF No. 49 at 11.  That is because, as this Court and courts before it have recognized, the FACE

Act "does not restrict any person's power to express his support or opposition to abortion on

religious grounds, as long as the person does not engage in the kind of threats or invasions of

person or property that are routinely considered unlawful."  *Gallagher*, 680 F. Supp. 3d at 903;

*see also Cheffer*, 55 F.3d at 1522 (FACE Act "leaves ample avenues open for [individuals] to

express their deeply-held belief so long as this expression does not involve physical force, threats

of such force, or physical obstruction").  Accordingly, the FACE Act does not prohibit

Moscinski from "advocat[ing] for the protection of human life," or "encourag[ing] women to

turn away from the deadly sin of abortion."  Counterclaims ¶ 65.  The FACE Act simply

prohibits him from obstructing access to the clinic.  Thus, as in *Gallagher*, the FACE Act does

not substantially burden the religious practices that Moscinski has identified.  680 F. Supp. 3d at

903.

Even if enforcement of the FACE Act against Moscinski burdened his religious practice,

there is a compelling government interest in preventing injury, intimidation, and interference

with those who provide and seek to obtain reproductive health services, and the government's

enforcement of the FACE Act is narrowly tailored. *See Williams*, 701 F. Supp. 3d at 273

(holding that "[t]he Government has compelling interests in preventing violence, preventing

physical obstruction to health-care facilities, and preserving physical access to health care" and

that enforcement of the FACE Act was "narrowly tailored"); *Gallagher*, 680 F. Supp. 3d at 903

(holding that FACE Act enforcement served a compelling government interest and was narrowly

13

tailored); *Am. Life League, Inc.*, 47 F.3d at 655-56 (assuming the FACE Act imposed a "substantial burden" for purposes of RFRA analysis and finding that the FACE Act "serves sufficiently compelling governmental interests" and "is sufficiently narrow"); *Weslin*, 964 F. Supp. at 88 (agreeing with *American Life League* that the FACE Act does not violate RFRA), *aff'd*, 156 F.3d 292 (2d Cir. 1998); *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996) (summarily agreeing with other courts that FACE does not violate RFRA); *Brock*, 863 F. Supp. at 866-67 ("FACE addresses governmental interests in preventing violence and ensuring access to reproductive health services. Those interests are compelling, and FACE is the least restrictive means of furthering them."). Moscinski's RFRA claim here is materially identical to those arguments rejected by other courts, and this Court should likewise conclude that Moscinski's RFRA arguments fail.

### D. Moscinski's Commerce Clause Claim Should Be Dismissed

Moscinski contends that the FACE Act is "unconstitutional because Congress exceeded its authority under the Commerce Clause." Counterclaims ¶ 83. As this Court has already recognized, this argument conflicts with binding precedent. *See* ECF No. 43 at 9 (citing *Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002); ECF No. 49 at 7 (same).

In *Norton*, the Sixth Circuit squarely held that "Congress validly enacted the [FACE] Act pursuant to its Commerce Clause authority." 298 F.3d at 556. Every other federal appellate court to consider the issue has reached the same conclusion. *See Gregg*, 226 F.3d at 264–66; *Weslin*, 156 F.3d at 296; *Bird*, 124 F.3d at 678–684; *Terry*, 101 F.3d at 1417; *United States v. Soderna*, 82 F.3d 1370, 1373–74 (7th Cir. 1996); *Dinwiddie*, 76 F.3d at 920; *Cheffer*, 55 F.3d at 1521; *Am. Life League*, 47 F.3d at 647.

Moscinski concedes that *Norton* "upheld the constitutionality of the FACE Act" under the Commerce Clause. Order at 9, ECF No. 39-1 (citing Moscinski Reply Br., ECF No. 37 at

14

16).  Moscinski argues that "*Norton . . .* was wrongly decided," Counterclaims ¶ 82, but as this Court has already recognized, it is "bound by *stare decisis* to adhere to Sixth Circuit precedent which has not been reversed by an *en banc* opinion of that appellate court nor overruled by the U.S. Supreme Court."  ECF No. 43 at 9; *see also See United States v. Yoon*, 398 F.3d 802, 806 (6th Cir. 2005).  Moscinski's Commerce Clause claim should therefore be dismissed.

### E.     Moscinski's Tenth Amendment Claim Should Be Dismissed

Moscinski contends that "[t]he application of [the] FACE [Act] in this case violates the Tenth Amendment and the principles of federalism" because his actions "amounted to trespass, at best, and trespass is a paradigmatic common-law state crime."  Counterclaims ¶¶ 78, 79. Moscinski contends that enforcing the FACE Act against him would thus "convert virtually every trespass at an abortion facility into a federal offense," in violation of "principles of federalism and the Tenth Amendment."  *Id.* ¶ 79. These allegations fail to state a claim.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  *New York v. United States*, 505 U.S. 144, 155 (1992) (citation omitted). This language "states . . . a truism" that "all is retained which has not been surrendered."  *Id.* at 156 (citation omitted).  "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."  *Id.*

Here, as explained above, the Sixth Circuit has held that the FACE Act is a valid exercise of Congress's Commerce Clause power.  *Norton*, 298 F.3d at 556.  The application of the FACE Act in this instance is, therefore, an exercise of power delegated to the United States by the Constitution, and thus cannot violate the Tenth Amendment or the principles of federalism that it embodies.  *See, e.g., Wachovia Bank v. Watters*, 431 F.3d 556, 563 (6th Cir. 2005) (holding that Tenth Amendment was "not implicated" because Congress validly acted under Commerce

15

Clause), *aff'd*, 550 U.S. 1 (2007); *Am. Life League, Inc.*, 47 F.3d at 647–48 (rejecting federalism challenge to FACE Act enforcement); *Cheffer*, 55 F.3d at 1521 ("Because the [challenged statute] is within Congress's Commerce Clause power, it does not violate the Tenth Amendment."); *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993) ("[T]he Tenth Amendment does not operate upon the valid exercise of powers delegated to Congress by the Commerce Clause.").

Moreover, this Court has already held that the FACE Act is not being used here to "punish a 'simple trespass,'" as Moscinski alleges. ECF No. 39-1 at 7; *see also* ECF No. 49 at 10. Rather, the FACE Act prohibits "physical obstruction" of individuals obtaining or providing reproductive health services and "forbids physical interference with people going about their own lawful private business." ECF No. 39-1 at 7. Moscinski cannot relitigate the nature of the enforcement action against him.

Notably, Moscinski does *not* contend that the FACE Act violates the Tenth Amendment on the ground that it "commandeers" States to enact and enforce a federal program. *See, e.g.*, *New York*, 505 U.S. at 170; *Printz v. United States*, 521 U.S. 898, 904 (1997). Instead, Moscinski's argument appears to be simply that the federal government cannot enforce federal law against an individual for conduct that also constitutes a "paradigmatic common-law state crime." Counterclaims ¶ 79. But that is obviously not the law. "Federal laws criminalizing conduct within traditional areas of state law . . . are of course commonplace under the dual-sovereign concept and involve no infringement *per se* of states' sovereignty." *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *see also United States v. Davis*, 906 F.2d 829, 832 (2d Cir. 1990) (federal and state sovereigns "[e]ach ha[ve] the power . . . independently to determine what shall be an offense against its authority"). "So long as a federal criminal statute

16

falls within the limits of the Commerce Clause, it withstands the challenge that it interferes with the states' ability to define and enforce the criminal law." *Johnson*, 114 F.3d at 481 (citation omitted).  Accordingly, Moscinski cannot state a claim under the Tenth Amendment or principles of federalism.

**CONCLUSION**

The Court should dismiss Moscinski's counterclaims and third-party complaint against the official-capacity defendants.

Dated:  January 17, 2025

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DANIEL SCHWEI
Special Counsel

/s/ John Robinson
JOHN ROBINSON (DC Bar. No. 1044072)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

*Counsel for Official-Capacity Defendants*